Good morning, Your Honor. It's Terry Davis on behalf of Appellant Pendar Fazeli. Appellant is here today to appeal from the lower court's ruling granting summary judgment in the defendant's favor on plaintiff's sole cause of action for retaliation. In reaching their decision to grant summary judgment, the lower court determined that plaintiff did not produce a prima facie case of retaliation. The lower court ruled that the record was unchallenged that plaintiff did engage in a protected activity by reporting a claim of sexual harassment, which was investigated by the bank, and the employee was ultimately terminated. The court also determined that the appellant was subjected to an adverse employment decision in that after 70 days of coming forward with his complaint of sexual harassment, his employment was terminated. You agree that just mere proximity between the protected or the alleged protected activity and the adverse employment action is not enough to establish the causation? There are cases that say that. Given the 70 days... I'm just trying to figure out what do you have here more than the proximity of the two events. The record from the district court is rife with multiple facts that would suggest... Highlight them for me. I would love to. The employer based their decision to terminate the appellant's employment based on two reasons. One, they contended that he violated their ethics code. Two, they contended that he breached their confidentiality. In looking at their ethics code, the employer said that by allowing Ms. Vercucci to sleep off her drunkenness at his apartment, that he violated the ethics code. Those are the reasons, and you're saying they're pretextual, right? I'm saying that the... So, we're going to... Okay. They gave these reasons for firing him. How do... Just tell me how those go... Are those part of the causation analysis? I thought they came later in the package. The reasons that are offered by the bank are connected between the protected activity he engaged in and his termination. What is the second? He filed what you're claiming is retaliation for filing a sexual harassment complaint, which I assume is based on she created a hostile work environment for him there. Correct? By these letters and terrible things she allegedly did there. Well, yeah. Well, whatever. And so, the bank investigates that. Yes. And it fires her. They did. So, I see that within two and a half months, they fired him. Seventy days. Okay. So, what makes us think that the act of the filing of the complaint is what caused him to be fired? The reasons that were offered by the employer. Okay. So, the pretextual reasons were so bad that they make it clear or they give enough evidence that there was some causation between the two. That is exactly correct. And I'd like to explain this. Okay. The ethics code that's offered by... And that's what you're offering. I mean, you're not offering any other relationship between the firing. You're offering their reasons that they fired him as being so bad that they make the connection. Yes, because the facts don't support the employer's reasons. But can I just ask, before we get to these reasons, what was his employment history? I mean, did he have any negative reviews or... Mr. Fuseli was the most stellar employee that they had. His branch was the number one branch in his district. In fact, prior to this happening, he was being considered for the regional manager promotion. He was the number one employee. In fact, they voted that he was going to be entitled to a stock benefit because he was such a good employee. Other managers had voted him to be the number one manager in the district. So there was no performance problems with this employee. So there was no performance problems, but they fired him because he let the lady sleep over and he breached the confidentiality agreement during the investigation by asking two people what they remembered. That's correct. Okay. So does that make sense? I mean, why would the bank retaliate against this, you know, award-winning bank manager that they have, branch manager, simply because he filed what appears to be a meritorious sexual harassment complaint against a problematic subordinate? I'm having trouble understanding that. When they stated their reason in ER 69, they told the appellant that he was like a politician with a sex scandal, that they were going to punish him. Okay. But that's not firing him for filing the harassment complaint. That's firing him because whatever he did when he let her sleep over caused them a problem at the bank. That's not the same as firing him for filing the complaint, and that's what you have to prove. So maybe they fired him just because he made their life difficult with regard to some bad notions around because of what he, of her sleeping over, but that's not, you have to. The policy that they're proffering doesn't even apply to the situation at hand. It has no applicability to allowing a subordinate employee to sleep on your couch. If it were true, then he shares an apartment with another branch manager, and what the bank has asserted is that this breach of conflict, this code of conflict, is so well known that everybody knows that it's applicable to this situation, and yet on the day in question, three branch managers conclusively agreed she should sleep on the couch. You understand that they can fire him for a dumb reason. They just can't fire him for a discriminatory reason. That is, they can't fire him for filing that complaint. Labor Code 2922, of course. They don't need a reason. You're focused on the pretextual reasons, so let's talk about that then. You get beyond, I guess, the questions regarding the prima facie case, but how was the violation of the confidentiality agreement pretextual? I mean, even if you question, which I don't know whether you can, but let's just say we can question the ethics reason. How was the violation of the confidentiality agreement pretextual? Tamara Johnson stated in her declaration that she instructed Mr. Fazili not to discuss the things that they discussed in their investigation. And isn't that standard procedure? I mean, once there's an investigation going on, they don't want anybody talking to anybody else. They don't want people kind of aligning with each other in terms of what was said and all that. I mean, isn't that pretty standard? In order to make that argument, you would have to state that no one's entitled to talk to anybody about anything, which would, in essence, deny someone the right to seek counsel. Well, about the investigation, anything related to the investigation, I mean. But that's not what Mr. Fazili discussed. He didn't discuss the substance of the investigation. I thought he said I wanted to get it right. I wanted to get it right with the other two people he talked to. He talked to his roommate, Scott McKinney, and his assistant manager, Ryan Sheehan. He didn't talk to them about groceries. He talked to them about the night in question in an effort to refresh his recollection. That's not correct because. Okay. Tell me what's wrong with that statement. Ms. Johnson stated in her declaration that she told them not to discuss what they talked about. That's in the record. He never asked Ryan Sheehan anything to do with what he talked about with Ms. Johnson. He asked Mr. Ryan Sheehan, he asked him in looking at ER 167, he asked Mr. Sheehan about her decision to contact the media. That had not been discussed because Ms. Johnson told Mr. Fazili, if you remember anything else or you want to clarify anything or bring it to my attention, please do so. The issue regarding the media had not been discussed. It could not have been encompassed in their conversation. But at ER 172, I think at 170, it looks like. ER 167? No, 172, 170. He talked to McKinney and Sheehan to double check the version he had presented to the bank. ER 172, Mr. Fazili asked Mr. McKinney, had you ever seen her upstairs? Ms. Johnson never asked Mr. Fazili what anybody else saw. What Mr. Kinney observed was not part of their conversation. You said this was a subtle distinction. I am. It is a subtle distinction. Is it so subtle that the bank might not get this distinction? I believe the bank knows exactly what they're doing, and I'll tell you why. Because if you look at the conversation that Ms. Johnson had with Ryan Sheehan, now, we have to understand that the bank says this confidentiality breach is one of the worst things you can do. They never investigated the confidentiality breach, right? They didn't investigate the facts. They did not talk to the witnesses and ask them if it was breached. So how could they assert you violated the confidentiality agreement when they didn't investigate and they didn't even know what was said? That goes to the harm of pretext. Well, just a second. He's the one who told them. Pardon? Isn't he the one who told them I talked to these people? He sent them e-mails, but he didn't say he talked to them about anything we discussed. She asked him, if you know anything different, let me know. You could argue she extended a license to find out any new facts and bring me up to date, and that's exactly what he did because it was never discussed with the media and it was never discussed what somebody else witnessed about being upstairs. But more importantly than that, when Ms. Johnson has her interview notes with Mr. Monroe at ER-163, she makes great care to assert that you're not supposed to discuss this. Now, Ryan Sheehan is Mr. Fuseli's assistant manager, but if you go look at ER-167 and look at her notes with him, she never mentions a word about confidentiality. She never says one iota about breaching confidentiality. So Mr. Sheehan is free to discuss this, and the bank has offered no evidence that he was told not to discuss this. So when you look at the... The bank told him not to discuss it, correct? Taught to discuss what was in their conversation. Correct. What he asked someone else. Discussion is a two-way flow of information. He asked him, what about did she ever see her upstairs? That was not part of his discussion with Ms. Johnson. He sent e-mails, and he acknowledged this to the investigators, I guess to the investigators, telling them that he had discussed the events under investigation with his friend. He said, I asked Ryan Sheehan about the media, and I asked Scott McKinney, which is his roommate, did you ever see her upstairs? And what was his purpose in asking them that? Here you have an employee who's the number one employee being considered for promotion, now told by upper-level managers that he's like a politician with a sex scandal, that they are going to end his employment. They already told him that. They told him in ER 69, we don't know how your employment's going to end. If you excise the operative words from that statement, your employment is going to end. We just don't know how yet. If Bank of America truly believed that Mr. Frizzelli engaged in a conflict of interest by allowing an employee to sleep their drunkenness off on his couch, they would have fired him on January 15, 2010, when they first learned about him. I've been practicing employment law for 20 years. Employers don't wait almost two months to terminate his employment. Bank of America, by their actions, believed that that reason was not a good enough reason to terminate him. And if you look at the conflict policy, and you look at what the CEO of Bank of America says it means, and I'd like to direct the court's attention to that, ER 131, it means, quote, doing the right thing, quote, three managers in the room agreed that this drunk employee shouldn't be put out on the street and drive home. What would be the impact if she got in an accident and killed some people, and somebody would have argued that they were at a nightclub where other branch managers were playing in a band, and someone could argue that this was a team-building exercise? Bank of America didn't terminate Mr. Frizzelli at that moment. But more importantly, Mr. Frizzelli is sharing an apartment with a branch manager, Scott McKinney. His employment wasn't terminated. He had landlord-tenant rights in that apartment. He allowed this employee to sleep on the couch. If these things are, okay, so if these two things are protectional, what was the real reason? They said it in ER 69. He was a politician with a sex scandal. And it was, and that was because the person who he let sleep off her drunkenness in his house started making, putting it on Facebook and doing all of that. After he reported the sexual harassment. After he reported, well, then he, wasn't she doing some of that, and that's why he reported it? No. What led to him ultimately reporting it is when her sexual harassment from him turned to his fiancée, and she started calling her a slut and a whore, and word started getting around. Then he decided it was time to take action. Is there any further questions? I think we have, am I understanding your argument? Oh, yeah. Okay. Good morning, Your Honors. Camilo Cabreria on behalf of Defendant Bank of America. May it please the Court. Maybe we should go one at a time. Let's, discriminatory animus. My understanding was that the protected act is filing a sexual harassment complaint against Ms. Perpucci, which led to her termination. Counsel just stated that he was a politician with a sex scandal. That's not a protected act. There is no evidence. I think that's what counsel was representing, that he was a politician with a sex scandal. I think he was saying that Bank of America thought he was a politician with a sex scandal, and so they were going to fire him. Right, so they would fire him because. I think he's making a little leap there, and the leap is the sex scandal was caused by his filing the sexual harassment complaint. I mean, that, because that has to be the reason he's fired, so he must be making that leap. Okay, okay. How did I understand that? Okay. So going to the discriminatory animus, I think Your Honor hit it on the head in that there is no link here. There are no comments by anybody at Bank of America saying that they had any displeasure with the fact that he filed a sexual harassment complaint against Ms. Perpucci. He's making the link with the close proximity in time, two and a half months, and he says crazy unacceptable reasons, and that's how we make the link. Is that a way to do this? Well, Your Honor, I think that's skipping the steps, right? Well, I don't, you know, I'm asking you, is that a way that this could be done? I don't believe so. I think you don't get to the justified reason until you show a prima facie case. Okay. And I think the law is clear that temporal proximity alone is insufficient. You have to show surrounding circumstances to show that the retaliatory, there was retaliatory intent. No, but it's indirect. I mean, our cases have held at much longer periods of time after a protected act occurred. I think the Casalter case is circumstantial evidence of a causal connection. Right. But the Casalter case said timing and surrounding circumstances, not timing alone. There is some surrounding circumstances here, too. I mean, do you agree that his employment reviews were all very positive and that he could have been promoted and his work was held in high regard? I agree that he did not have performance issues before this situation came out. Okay. Let me ask you then, wasn't there also around this time a change in management and his prior superior said this isn't going to, whatever had happened, it's not going to cause you any problems at the bank, but then the new guy came in and that's when he got fired? Well, Your Honor, the timing I think is very important here. So then can I just briefly go through it? Uh-huh. So what happens is he goes to a club, allows a drunk subordinate employee who had behavioral issues to come and spend the night at his house. Then what happens, two months later this employee has an altercation with a customer. Plaintiff, his superior, and HR determine she needs to be fired. So what does he do? He goes to fire her and she says, if you fire me, I'm going to tell everybody that we slept together. And then she starts crying and she's apologetic. That is the conflict of interest that was violated by the Code of Ethics when he allowed her to sleep at his house because what did he do? He did not fire her. He changed his mind. And then he calls his boss and says, by the way, we decided not to fire her and I did that because she was crying and apologetic. Wait, why didn't, if it's a violation of your code for her to have slept over and everybody knows she slept over, why didn't you fire him immediately? They didn't know. Well, there were three other managers, three other managers knew. She was telling people. It had, there's no evidence in the record at all that it had trickled up to anybody above him who would have known about this conflict. So it didn't trickle up until after he filed his retaliation claim. That's true. That's true. But that came out not because he filed his retaliation claim. That came out because there was an investigation conducted. Well, he filed his complaint against Ms. Ferrucci. I misspoke. Right, right. And that's the protected act. That's the protected act. At the end, when she was fired, she was fired. So he brings it to upper management's attention by filing this complaint. I do not believe they did not, the filing of the complaint, he did not put in, oh, and by the way, she slept over at my house on a drunken evening. He said, hear the text, she's harassing me. Are you suggesting that, I mean, I'm hearing a suggestion here that's like, I'm not sure it's part of the record and it's kind of bugging me. Are you suggesting that they did sleep together? I'm not suggesting. You know what, the record's vague on that. She's threatened the record. That is not a basis for his being fired. Correct. Okay. I just want to be clear on that. So let me, to get to your point, so when they learn, they didn't learn because he filed a sexual harassment complaint, is when she was being fired, she says, I don't know why I'm being fired. I slept in his bed and he did unethical business practices. That was her allegations. And a subsequent investigation had to be conducted. And at that subsequent investigation, that's when they learn that she threatened to reveal this alleged, or lie, or whatever we want to say. What was the lie? The lie, well, she threatened to say that they slept together when she was going to be terminated. And after she threatened that, he decided not to terminate her. But did you use that as the reason that you gave him for firing him? The reason was that was an indicia of the code of ethics violation when he allowed her to spend the night. Right. But you didn't use the reason that he failed to terminate her when he should have because he had a conflict. That's not what he was told. Correct. He was told he had a conflict. Correct. So he was told you created a conflict of interest, violated the code of ethics, when you allowed her to spend the night at your home. And, importantly, when we were investigating your actions and with respect to that, you were told that this investigation must be confidential. And he breached that as well. So you have a branch manager who's in charge of an entire branch of Bank of America, thousands and thousands of dollars, employees, two completely inappropriate acts, we believe, and, therefore, the bank terminated him. And with respect to the investigation, at SCR 82, he was asked the question, did you also speak to Scott McKinney, this is his banking center manager roommate, about the investigation? Yes. What did you say? I asked him if Eliana, that's Ms. Forcucci, had ever seen my room, dot, dot, dot. So this distinction of we didn't talk about the investigation, he did talk about the investigation, he did talk about the investigation. He knew he was not supposed to. He knew he was not supposed to go to witnesses and discuss the underlying facts. But is that what he did? I mean, it sounds like your argument is that the bank would have terminated him for breaching confidentiality when he asked two friends what they remembered and then he voluntarily went back to the people who were investigating and told them that he had asked what they knew. Yeah, he admitted to violating confidentiality. The fact that he maybe... He didn't tell anybody anything. He asked them what they knew. How does that violate confidentiality? He's asking, well, he's saying what happened, but he's asking them questions about the content of the investigation. The investigation is all about... No, he asked them what they remembered about that night. Specifically, his email says that he asked the assistant manager about the termination meeting with Ms. Forcucci and he asked his banking center manager about Ms. Forcucci visiting his home. Both of those topics were covered when he interviewed and was interviewed by HR. If you look at ER 163 to 165, those are the investigation notes of what he discussed with the HR investigator. And those topics, he then went and asked and questioned these two witnesses about those topics in violation of the confidentiality of the investigation. And, again, there has to be a link here to show any type of discriminatory animus because he filed a sexual harassment complaint against the subordinate employee. The Bank of America took immediate action. Within two weeks, she was let go. There's no evidence that any manager, any supervisor, told him that this pleads them in any way. The displeasure that he received was by the fact that they learned later that he had allowed this drunk subordinate employee with behavioral issues to sleep at his house when he's her boss and he's the banking center manager. Well, I think your argument now is it wasn't just that. It's that this kind of behavior set him up to be, in essence, blackmailed, and he was. That's right. That's why. So when did they know that he was set up to be blackmailed and he was? When did they know that and he was? They learned about that when he was questioned after she was let go and the allegations came out that she made against him, so that second investigation. So in February of 2010, and that's ER 163 and 165, that's when he specifically questioned about, so wait a second, you didn't fire her? And he actually, in that interview, said, yeah, I used bad judgment. I guess I should have fired her. Bad judgment, yeah. So just to be clear, Judge Gilfeld ruled that on the basis of, ruled in the summary judgment on the basis that Planoff did not establish a prima facie case. And then he went further and said, and even if he had established a prima facie case, the bank's legitimate good faith reason was valid and there was no evidence to counteract that. He tried the famous Dalton suspenders. He did, indeed. I guess I have to question whether, I mean, if I were to disagree and decide that he did allege enough for a prima facie case, I think some of these other issues seem to be more factual questions and not resolvable on summary judgment. Well. Because they're certainly disputed at the stage of summary judgment. Well, Your Honor, actually, all of the undisputed facts are undisputed. And if you look at the separate statement and undisputed facts. I'm looking at some disputed facts. Okay. I believe that the key facts here are not disputed. I don't think there's any dispute as to the fact that the Bank of America believed that he violated the code of ethics by allowing that employee to spend the night at his house. And I think that it's undisputed that Bank of America believed by his own admissions that he violated the confidentiality of the investigation. Plaintiff's argument as to the technicalities of whether it did, in fact, violate the code of ethics, that doesn't counteract the Bank of America's good-faith reasonable belief. There's no evidence at all that it had, you know, it's so outrageous that there's a disputed factor. I think the facts are undisputed as to what happened here. Plaintiff's trying to argue that the Bank of America's good-faith belief that there was a code of ethics violation is not to be believed, that that's based on the facts. I don't see disputes of fact here that would require the case to continue. If there's any specific item Your Honor would like me to address, I can do that. All right. Thank you, counsel. Rizzelli v. Bank of America will be submitted. And this case, I mean, the session of this court is adjourned for the week. All rise. You walk a difficult way. Most of you do. This court is adjourned.
judges: Restani, Wardlaw, Murguia